```
                                          ┌─────────────────────┐
                                          │       FILED         │
                                          │                     │
       IN THE UNITED STATES DISTRICT COURT│     NOV 17 2011      │
      FOR THE EASTERN DISTRICT OF VIRGINIA│                     │
            Newport News Division         │ CLERK, U.S. DISTRICT COURT │
                                          │       NORFOLK, VA   │
                                          └─────────────────────┘
```

MARK J. BAKER,

      Plaintiff,

v.                               Case No.: 4:11cv37

PATTERSON MEDICAL SUPPLY, INC.,

      Defendant/Third-Party Plaintiff

v.

DYNA-LIFE PRODUCTS, INC.,
and
VALENTINE INTERNATIONAL LTD.,

      Third-Party Defendants.

UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The Court has before it Third-Party Defendants DynaLife Products, Inc. ("DynaLife") and Valentine International Ltd.'s ("Valentine") (collectively "Third-Party Defendants") Motion to Quash Service of Process ("Motion to Quash") and Motion to Dismiss for Lack of Personal Jurisdiction ("Motion to Dismiss"). ECF Nos. 42, 44. Defendant/Third-Party Plaintiff, Patterson Medical Supply, Inc., ("Patterson") opposes the motions and, in the alternative, has requested jurisdictional discovery. ECF Nos. 47-48. This matter was referred to the undersigned United States Magistrate Judge for a recommended disposition pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil

1

Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by Order of Reference entered August 12, 2011. ECF No. 57. For the reasons stated herein, the Court RECOMMENDS that Third-Party Defendants' Motion to Dismiss be GRANTED and that their Motion to Quash be DENIED as MOOT. The Court DENIES Patterson's request for jurisdictional discovery.

## I. Factual and Procedural History

Plaintiff Mark J. Baker ("Baker") initiated this action on January 18, 2011 when he filed suit against Patterson in the Circuit Court for the City of Hampton, Virginia alleging negligent design, manufacture, and distribution, failure to warn, instruct, and appraise, and breach of express and implied warranties. See ECF No. 1 attach. 1. This suit is based on injuries Baker suffered as a result of an alleged defect in a folding shower chair. Patterson removed the suit to federal court in the Eastern District of Virginia, Newport News Division on February 11, 2011. ECF No. 1.

On March 14, 2011, Patterson filed a third-party complaint ("complaint") against DynaLife and Valentine for breach of warranty and for equitable indemnity. EFC No. 12. On March 15, Patterson filed Affidavits for Service of Process with this Court, attesting that Defendants are non-residents of Virginia and subject to personal jurisdiction in the state pursuant to Virginia Code § 8.01-329. ECF Nos. 14-16. On April 14, 2011, Patterson effectuated

2

service on the Secretary of the Commonwealth as statutory agent for the Third-Party Defendants. ECF No. 29. On April 19, 2011, the Secretary of the Commonwealth forwarded by certified mail summonses and the third-party complaint to DynaLife Products, Inc. in Boca Raton Florida c/o HCRM Corp. and to Valentine International, Ltd. in Boca Raton and DelRay Beach, Florida c/o Mary Valentine-Gyorffy, Jonny Chiu, and Zolton Gyorffy.[1] ECF No. 29. Patterson filed Certificates of Compliance with the Court on April 20, 2011. ECF No. 29.

Third-Party Defendants responded with a Motion to Quash Service of Process and a Motion to Dismiss for Lack of Personal Jurisdiction. ECF Nos. 42, 44. Patterson filed its timely opposition on June 3, 2011, requesting jurisdictional discovery if this Court finds insufficient evidence to establish personal jurisdiction. ECF Nos. 47-48. Third-Party Defendants filed their timely Reply on June 9, 2011. ECF Nos. 49-50. The Court held a hearing on the motions on September 23, 2011, at which William Devine, Esq., and Stephen Anthony, Esq., represented Valentine and DynaLife, and T. Jeffrey Salb, Esq., represented Patterson. The official court reporter was Sue Ash. At hearing, Patterson

---

[1] HCRM Corp is DynaLife's registered agent. ECF No. 14. The summonses directed toward Johnny Chiu and Zoltan Gyorffy were sent c/o DynaLife Products, Inc., 123 N.E. First Avenue, Delray Beach, FL 334444. ECF No. 24, at 1,3.

introduced a 2010 DynaLife catalog, which was marked as Defendant's Exhibit 1. ECF No. 60.

Neither Valentine nor DynaLife is a resident of Virginia. Valentine is a Taiwanese corporation located in Hsichih City, Taipei Hsien, Taiwan. Valentine-Gyorffy Aff. ¶ 2, ECF No. 45 attach. 1. DynaLife is a Florida corporation with its principal place of business in Delray Beach, Florida. Gyorffy Aff. ¶ 1, ECF No. 45 attach. 2.

Valentine is a "trading company" that does not manufacture or take possession of goods. Valentine-Gyorffy Aff. ¶¶ 5-6. According to Valentine's president, the company "connects buyers and sellers but does not get involved in owning, manufacturing, or storing merchandise." Id. ¶ 3. Asian manufacturers produce all goods that Valentine trades. Id. ¶ 4. Clients submit purchase orders to Valentine, and Valentine arranges for the manufacturer to ship the ordered product directly to freight forwarders for Valentine's clients. Id. ¶¶ 5-6.

Valentine conducts business exclusively with clients able to purchase large volumes of products. Valentine-Gyorffy Supplemental Aff. ¶ 6, ECF No. 49 attach. 1. At minimum, Valentine's clients must order $3,500 worth of products. Id. ¶ 9. A typical order is worth approximately $10,000. Id. In 2010, Valentine served approximately 100 clients worldwide, sixteen of whom were located in the United States. Id. ¶ 7. One of the sixteen domestic clients

4

was located in Virginia. Id. ¶ 21. That client ordered a custom-designed part for a vacuum holder--an order that accounted for less than .08 percent of Valentine's total revenue in 2010. Id. ¶¶ 21-22. Valentine previously sold products to another Virginia customer in or around 2004. Valentine-Gyorffy Aff. ¶ 7. Valentine has not sold products to clients in Virginia in 2011. Gyorffy Supplemental Aff. ¶ 5, ECF No. 49 attach. 2; Valentine-Gyorffy Supplemental Aff. ¶ 23. Valentine's president is not aware of any marketing or sales in Virginia of products it has sold to its clients. Valentine-Gyorffy Aff. ¶ 8.

Valentine operates a website that is accessible worldwide, including in Virginia.[2] Although the website provides information regarding Valentine's products, it does not allow visitors to make purchases. Valentine-Gyorffy Supplemental Aff. ¶ 11. Visitors may request a password to download an older version of Valentine's product catalog by entering their contact information into an electronic form on the website. Id. ¶¶ 12-15. Since 2006, 470 visitors have requested passwords, thirty-eight of whom listed United States addresses. Id. ¶ 16. Only one request, in 2007, came from a visitor listing a Virginia address. Id. ¶ 17.

---

[2] This website, http://www.valentine-dynalife.com, contains DynaLife's logo in the banner on every page. The only reference to Valentine on the site is under contact information, where Valentine International Limited is listed as maintaining an office in Taiwan.

Mary Valentine-Gyorffy is a president of Valentine, and Johnny
Chiu is its director in Taiwan, where he lives. Valentine-Gyorffy
Aff. ¶ 1. Valentine has been registered as a foreign corporation
with the U.S. Food and Drug Administration ("FDA") since 2002. Id.
¶ 12. In its application for FDA registration, Valentine named
Zoltan Gyorffy as its agent and official correspondent. Id. ¶ 13.

DynaLife provides administrative and clerical support services
for Valentine, including telephone, fax, and electronic
communication services between Valentine and Valentine's customers.
Id. ¶ 3. DynaLife's sole client is Valentine. Gyorffy Aff. ¶ 4.
DynaLife provided services to Valentine in connection with
Valentine's 2010 sale to a customer in Virginia. Gyorffy
Supplemental Aff. ¶ 3. Valentine pays DynaLife monthly for its
services. Valentine-Gyorffy Aff. ¶ 19. Although DynaLife accepts
purchase orders on behalf of Valentine's clients, the purchase
orders bear Valentine's address and company name. Valentine-Gyorffy
Supplemental Aff. ¶¶ 3-4. Clients direct payments to Valentine in
Taiwan, not the United States. Id. Mary Valentine-Gyorffy is the
sole officer for DynaLife. Valentine-Gyorffy Aff. ¶ 15.[3] Zolton

---

[3] Patterson has alleged that Valentine and DynaLife are engaged in
a partnership or joint venture such that each one is liable for the
negligence of the other committed in pursuit of the joint
enterprise. 3d Party Compl. ¶ 9, ECF No. 12. To support this
assertion, Patterson presented evidence of a product catalog
containing the names and mailing addresses of both DynaLife and
Valentine, a printed page from the url
http://www.valentine-dynaLife.com containing the same, and emails

Gyorffy is Director of International Sales for the company. Gyorffy Aff. ¶ 1.

Shanghai New Well Medical Products, Co., Ltd. ("Shanghai Medical"), a Chinese corporation, manufactured the folding shower chair at issue in this case.[4] Valentine-Gyorffy Aff. ¶ 21. Valentine placed an order for the shower chair with Shanghai Medical on behalf of its client, Homecraft Rolyan Ltd. ("Homecraft"), a United Kingdom corporation and a subsidiary of Patterson. Id. ¶¶ 23-26. Patterson purchased the shower chair from Homecraft and sold it to the Hampton VA Medical Center in Hampton, Virginia pursuant to a purchase order placed on Baker's behalf. Patterson Opp'n Br. 2, ECF No. 47. At the request of the hospital, Patterson shipped the product directly to Baker at his home in Virginia. Id. Homecraft is the only customer to whom Third-Party Defendants have ever sold this particular model of chair. Valentine-Gyorffy Aff. ¶¶ 28-29.

---

from Mary Valentine-Gyorffy indicating an affiliation with both companies. See Patterson Opp'n Br. Exs. A-C, ECF No. 47 attachs. 1-3.
    This Court assumes without deciding that an agency relationship exists between Valentine and DynaLife for the purpose of its personal jurisdiction analysis. The actual nature of their relationship is immaterial, because Valentine and DynaLife's contacts with Virginia, even when aggregated, are insufficient to establish personal jurisdiction over them.
[4] Patterson avers that Valentine, alone or in partnership with DynaLife, manufactured the product at issue. 3d Party Compl. ¶ 10. However, sworn statements from officers of both Valentine and DynaLife state that neither company was involved in the manufacturing of the shower chair. Valentine-Gyorffy Aff. ¶¶ 3-6; Valentine Aff. ¶ 3.

Based on these facts, Third-Party Defendants challenge Patterson's service of process and this Court's ability to exercise personal jurisdiction.

## II. **Personal Jurisdiction**

### A. **Legal Standard**

When a defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), "[t]he plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). If the existence of jurisdiction turns on disputed factual questions, the court may resolve the challenge on the basis of a separate evidentiary hearing. Combs, 866 F.2d at 676. When the court addresses the issue of personal jurisdiction based on motion papers, supporting legal memoranda, and the relevant allegations of the complaint, "the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." Id. The Court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id.

8

To establish personal jurisdiction over a non-resident defendant, the plaintiff must demonstrate that the action falls within the ambit of Virginia's long-arm statute, Va. Code § 8.01-328.1, and that the Due Process Clause of the Fourteenth Amendment permits jurisdiction. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003); ESAB Grp. v. Centricut, 126 F.3d 617, 622 (4th Cir. 1997).

## B. Virginia's Long-Arm Statute

The Supreme Court of Virginia has stated that "the purpose of our 'long-arm statute' is to assert jurisdiction, to the extent permissible under the Due Process Clause of the Constitution of the United States, over nonresidents who engage in some purposeful activity in Virginia." Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc., 238 S.E.2d 800, 802 (Va. 1977). Because Virginia's Supreme Court has held that its long-arm statute extends to the full extent of the Due Process Clause, courts generally merge the statutory and constitutional inquiries. See Young v. New Haven Advocate, 315 F.3d 256, 261 (4th Cir. 2002) (quoting Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135-36 (4th Cir. 1996)) (internal citation omitted); Chung v. NANA Dev. Corp., 783 F.2d 1124, 1127 n.2 (4th Cir. 1986). It is nevertheless possible for a defendant's contacts with Virginia to "to satisfy due process but not meet the specific grasp of the Virginia long-arm statute provision." New Wellington Fin. Corp., 416 F.3d at 294 n.6.

9

Accordingly, the Court will first examine whether Virginia's long-arm statute authorizes personal jurisdiction over the Third-Party Defendants and then determine whether exercising jurisdiction comports with federal due process. See Jones v. Boto Co., Ltd., 498 F. Supp. 2d 822, 826 n.6 (E.D. Va. 2007).

Patterson's complaint alleges claims for breach of warranty and what appears to be equitable indemnity against Third-Party Defendants. 3d Party Compl. ¶¶ 19-25, EFC No. 12. Patterson argues that Virginia Code §§ 8.01-328.1(A)(4) and (5) authorize jurisdiction over Third-Party Defendants.[5] See Patterson Opp'n Br. 8, ECF. No. 47.

Subsection (A)(4) authorizes jurisdiction over a defendant who:

> Caus[es] tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth.

---

[5] In its complaint, Patterson mirrors the language of Virginia Code sections 8.01-328.1(A)(1)-(2) and (A)(4)-(5), 3d Party Compl. ¶ 17, but its opposition memorandum bases jurisdiction on only subsections (A)(4) and (A)(5), ECF No. 47, at 8-9. Patterson provides no facts to support jurisdiction under subsections (A)(1) and (A)(2). Because bare legal conclusions are insufficient to establish a prima facie case of jurisdiction, the Court only considers Patterson's arguments in support of jurisdiction under subsections (A)(4) and (A)(5). See Vianix Del., LLC v. Nuance Commc'ns, 637 F. Supp. 2d 356, 362 (E.D. Va. 2009).

Va. Code § 8.01-328.1(A)(4). This subsection "has two requirements for the exercise of jurisdiction: (1) a tortious injury in Virginia caused by an out of state act or omission; and (2) a relationship between the defendant and the state which exists in any one of the three ways specified in subsection (4)." First Am. First, Inc. v. Nat'l Ass'n of Bank Women, 802 F.2d 1511, 1514 (4th Cir. 1986).

Patterson has satisfied both requirements. First, it alleges that the negligent acts of the defendants caused Baker's injury in Virginia. Neither Valentine nor DynaLife entered Virginia in connection with the sale of the shower chair. Consequently, any alleged negligence on the part of either defendant must have occurred outside the state. Accordingly, the first requirement of subsection (A)(4) is met. Second, Patterson alleges that Third-Party Defendants' marketing activities in the state satisfy the second requirement of subsection (A)(4).

Third-Party Defendants engage in two types of marketing activities, distribution of catalogues and maintenance of a website. The record does not reflect the number of catalogues that Third-Party Defendants have distributed in Virginia, though Valentine did receive a request through its website for an older version of its catalogue from a Virginia address in 2007. Based on these facts, the Court cannot conclude that Third-Party Defendants have regularly solicited business or engaged in a persistent course

of conduct in Virginia with respect to their catalog distributions. Cf. DeSantis v. Hafner Creations, Inc., 949 F. Supp. 419, 426 (E.D. Va. 1996) (holding subsection (A)(4) did not authorize personal jurisdiction over a defendant whose contacts with Virginia consisted of an advertisement that ran in a national publication distributed in Virginia, "distribution of an undetermined number of free catalogues" in Virginia, and three products shipped to Virginia over a twelve-month period).

Nevertheless, Third-Party Defendants website brings them within the reach of subsection (A)(4). It is well settled in this judicial district that a defendant who operates a minimally interactive website that advertises products without geographic restriction and is accessible from Virginia, satisfies the "regularly solicits business" element of subsection (A)(4). See Graduate Mgmt. Admission Council v. Raju, 241 F. Supp. 2d 589, 593 (E.D. Va. 2003); Rannoch, Inc. v. Rannoch Corp., 52 F. Supp. 2d 681, 684 (E.D. Va. 1999); Bochan v. La Fontaine, 68 F. Supp. 2d 692, 701 (E.D. Va. 1999); Black & Decker (U.S.) Inc., v. Pro-Tech Power Inc., 26 F. Supp. 2d 834, 842 (E.D. Va. 1998).[6]

---

[6] These decisions recognize that the reach of Virginia's long-arm statute is extraordinary under this interpretation of subsection (A)(4) but point out that due process principles ultimately constrain a court's ability to exercise jurisdiction over a defendant. See Rannoch, 52 F. Supp. 2d at 685-86; Bochan, 68 F. Supp. 2d at 701 n.30.

12

In Black & Decker, the court found that subsection (A)(4) authorized jurisdiction over Taiwanese defendants where they advertised their products on "[web]sites accessible to any Virginia resident over the Internet, and they provided interested customers with the companies' e-mail addresses." 26 F. Supp. 2d at 842. The fact that the defendants never directly offered a product for sale in the state of Virginia did not alter the Court's analysis. Id.; see also Bochan, 68 F. Supp. 2d at 702 ("Though defendant does not conduct sales on his website, the website is sufficiently interactive to factor significantly in the jurisdictional analysis.").

Third-Party Defendants' website encourages visitors who have "experienced second-rate quality, poor communications, inferior service and fragmented shipments from Asian manufacturers" to consider doing business with them. Patterson Opp'n Br. Ex. B, at 7. The site is accessible from Virginia, provides a long list of products that customers may order, lists the terms and conditions of sales, places no geographic restrictions on its sales, provides hyperlinks for Valentine and DynaLife's email addresses, and requires visitors to fill out an extensive form to gain access to its catalogue. These online marketing activities fall squarely within the regular solicitation of business provision in subsection (A)(4) of Virginia's long-arm statute. Accordingly, Patterson has sufficiently demonstrated that Virginia's long-arm statute

13

authorizes jurisdiction over Third-Party Defendants.[7] The Court must therefore determine whether exercising such jurisdiction comports with constitutional due process.

## C. Constitutional Due Process

For a court to exercise personal jurisdiction over a non-resident defendant consistent with due process, the defendant must have "'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" Carefirst of Md., 334 F.3d at 397 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Contacts that are merely random, fortuitous, attenuated, or based on the unilateral activity of a third party do not satisfy the minimum contacts requirement. Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985). Rather, a defendant's contacts with the forum state must demonstrate that the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," Hanson v. Denckla, 357 U.S. 235, 253 (1958), such that the defendant "should

_____

[7] The Court notes that subsection (A)(5) of Virginia's long-arm statute does not authorize jurisdiction over Third-Party Defendants because Patterson has presented no evidence that Valentine or DynaLife could have reasonably anticipated that anyone in Virginia would use or be affected by the shower chair. See Va. Code. § 8.01-328.1(A)(5); Gordonsville Indus., Inc. v. Am. Artos Corp., 549 F. Supp. 200, 204 (W.D. Va. 1982) (holding that a non-resident defendant could not reasonably have expected that a product it designed would be used in Virginia where it designed the product for a non-resident third-party and contracted with a second non-resident third-party to construct the product).

reasonably anticipate being haled into court there," World-Wide Volskwagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

A plaintiff may demonstrate that the defendant has the requisite minimum contacts with the forum state in one of two ways. When the defendant's contacts with the forum state form the basis for the lawsuit, those contacts may establish specific personal jurisdiction over the defendant. Carefirst of Md., 334 F.3d at 397. When the defendant's contacts with the forum state do not form the basis of the claim, the Court may still exercise general personal jurisdiction if the contacts are "continuous and systematic." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 & n.8 (1984); see id. At oral argument, Patterson conceded that specific personal jurisdiction does not exist over Third-Party Defendants. Thus, the Court must determine whether Third-Party Defendants' contacts with Virginia satisfy the requirements of general jurisdiction.

Patterson faces a high burden in establishing general jurisdiction over Valentine and DynaLife. ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002) (holding that the "continuous and systematic" standard for general jurisdiction is "a more demanding standard than necessary for establishing specific jurisdiction"). "'Conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to [general jurisdiction].'" Nichols

v. Searle & Co., 991 F.2d 1195, 1199 (4th Cir. 1993) (alteration in original) (quoting Int'l Shoe, 326 U.S. at 317). Rather, general jurisdiction exists "[o]nly when the 'continuous corporate operation within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities . . . .'" Id. (alteration in original) (quoting Int'l Shoe, 326 U.S. at 317).

Patterson relies heavily on the case of Jones v. Boto Co, Ltd., 498 F. Supp. 2d 822 (E.D. Va. 2007), to support its jurisdictional argument. In Jones, Boto Co. ("Boto"), an Asian manufacturer, sold artificial Christmas trees to Target Corporation and Wal-Mart pursuant to contracts executed in Asia and surrendered ownership of the products at Asian ports. Id. at 824. A resident of Virginia purchased a Christmas tree that Boto manufactured from a Wal-Mart retailer in Virginia. Id. at 823-24. The tree subsequently caught fire and caused property damage. Id. at 824.

The district court held that Boto could have foreseen that its Christmas trees would end up in Virginia due to the fact that Boto supplied them to two of the nation's largest retailers. Relying on Justice O'Connor's plurality opinion in Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102 (1987), it held that such foreseeability, coupled with a website on which consumers throughout the world, including in Virginia, could complete product warranty registration and obtain product information, established a

16

prima facie case that Boto had purposefully directed activities toward residents of Virginia. Id. at 829. The court therefore concluded that Boto had sufficient minimum contacts with Virginia. Id. at 830.

Jones is inapposite to Patterson's argument for the existance of general jurisdiction. The court's minimum contacts analysis in Jones is based on the stream of commerce theory. Id. at 827. The stream of commerce theory of personal jurisdiction generally applies where "a nonresident defendant, acting outside the forum, places in the stream of commerce at product that ultimately causes harm inside the forum." Goodyear Dunlop Tires Operations v. Brown, 131 S. Ct. 2846, 2855 (2011) (emphasis in the original). Where injury arises from the sale of a defective product in the forum state due to the manufacturer's efforts to serve the market there, exercise of specific jurisdiction may be warranted. Id. at 2855. "But ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has general jurisdiction [over the defendant]." Id. Patterson has conceded that specific jurisdiction does not exist over Third-Party Defendants.  Accordingly, the only question is whether Patterson has presented evidence from which the Court may infer that Third-Party Defendants have substantial ties to Virginia. See Int'l Shoe, 326 U.S. at 317.

The record indicates that Third-Party Defendants' contacts with Virginia consist of two isolated sales to Virginia corporations in 2004 and 2010 plus Third-Party Defendants' minimally interactive website.[8] Considered together, these contacts are insufficient to establish general jurisdiction over Third-Party Defendants. See Silver Ring Splint Co. v. Digisplint, Inc., 508 F. Supp. 2d 508 (W.D. Va. 2007); see also Int'l Shoe, 326 U.S. at 317.

Although the Fourth Circuit has not stated a bright-line rule concerning the level of sales activity sufficient to establish general jurisdiction in a forum state, it has declined to exercise jurisdiction over a defendant whose activity in the forum state consisted of mail order sales to twenty-six customers in that state, "constituting 1% of all of its customers and representing .079% of its gross annual sales." ESAB Grp., 126 F.3d at 617, 621 (4th Cir. 1997); see also Nichols, 991 F.2d at 1200 (upholding district court's refusal to exercise general jurisdiction over a defendant who employed between seventeen and twenty-one representatives in the forum state, maintained vehicles registered

---

[8] Patterson argues that Third-Party Defendants solicit through their catalogs. Besides the 2007 request for a catalog from a Virginia address, Patterson has not provided evidence that Third-Party Defendants sent any catalogs to residents of Virginia. In any event, evidence of additional catalog distributions in Virginia would not change the jurisdictional analysis because "advertising and solicitation activities alone do not constitute the 'minimum contacts' required for general jurisdiction," Nichols, 991 F.3d at 1200, and Third-Party Defendants' additional contacts with Virginia are too sporadic and attenuated.

in the state, held two regional meetings there, and sold between $9 and $13 million worth of products in the state over five years, representing two percent of its total sales).[9]

In light Fourth Circuit precedent, Third-Party Defendants' meager sales activities in Virginia can hardly be considered continuous and systematic.   Third-Party Defendants had a single customer in Virginia in 2010, representing roughly one percent of their customers worldwide and .08 percent of Valentine's total sales. Valentine has never sent representatives to Virginia or held a trade show in the state. Valentine-Gyorffy Supplemental Aff. ¶ 6.

The fact that Third-Party Defendants maintain a minimally interactive website accessible in Virginia does not materially alter the minimum contacts calculation.[10] A state may not obtain

---

[9] The forum state's interest in vindicating the rights of its residents is relevant to the minimum contacts analysis, but it is merely one factor and did not receive great consideration in ESAB Grp., 126 F.3d at 624.

[10] The Fourth Circuit has adopted the Zippo sliding scale analysis of website interactivity to determine whether a defendant has established minimum contacts with the forum state. ALS Scan, 293 F.3d at 715. On one end of the scale are active websites, where the defendant "clearly does business over the Internet." Zippo, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). An active website is grounds for finding personal jurisdiction. Id. At the other end of the spectrum are passive websites, which do "little more than make information available to those who are interested." Id. Passive websites are not grounds for exercising jurisdiction. Id. Between these extremes is a range of interactive websites that allow a user to exchange information with the host computer. Id. In cases involving interactive websites, the court must look to "the level of interactivity and commercial nature of the exchange of information that occurs [on the website]" to determine whether the defendant had a manifest intent to target residents in the forum state.

general jurisdiction over an out-of-state defendant based on the fact that residents of that state regularly access the defendant's passive website. See ALS Scan, 293 F.3d at 715. Although the Valentine/DynaLife website is more interactive than the website at issue in ALS Scan, Patterson has not put forth evidence of significant Virginia contacts via the website. See Chiaphua Components Ltd. v. W. Bend Co., 95 F. Supp. 2d 505, 512 (E.D. Va. 2000) (Jackson, J.) ("Given that [Defendant] is not primarily an Internet based company and a lack of significant Virginia contacts with the Internet site, the Court is unwilling to accord undue weight to the fact of an Internet presence by the Defendant."). The website is accessible in Virginia, but visitors cannot purchase products on the site, and only one Virginia resident has requested a catalog via the site. Patterson cannot make out a prima facie case that exercising jurisdiction over Valentine and Dynalife is constitutional in the absence of additional evidence demonstrating that they have engaged in continuous and systematic contacts with Virginia.

---

Carefirst of Md., 334 F.3d at 400 (quoting Zippo, 952 F. Supp. at 1126).
    The Valentine/DynaLife website is interactive, but minimally so. It primarily provides information about Valentine's products. Visitors cannot view product prices or make purchases. The site's sole interactive feature is an electronic form that visitors can fill out to obtain a password they may then use to download and view an older version of a product catalogue.

### III. Whether to Allow Jurisdictional Discovery

Anticipating an inability to establish a prima facie case for personal jurisdiction, Patterson has asked the Court to grant jurisdictional discovery. The Court DENIES this request.

Discovery is generally broad in scope and freely permitted. See Fed. R. Civ. P. 26(b)(1). However, "district courts 'have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them].'" Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 64 (4th Cir. 1993) (alteration in original) (quoting In re Multi-Piece Rim Prods. Liab. Litig., 653 F.2d 671, 679 (D.C. Cir. 1981)). "The court does not abuse its discretion to deny jurisdictional discovery when the plaintiff raises only 'bare allegations' to dispute defendant's affidavits denying jurisdictional acts or contacts." Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc., 301 F. Supp. 2d 545, 554 (E.D. Va. 2004) (citing McLaughlin v. McPhail, 707 F.2d 800, 807 (4th Cir. 1983)). Moreover, jurisdictional discovery is not warranted when the discovery will not change the jurisdictional analysis. See Carefirst of Md., 334 F.3d at 403.

Although the Court must draw reasonable inferences in Patterson's favor, the Court cannot reasonably infer from the record before it that jurisdictional discovery is likely to uncover evidence of contacts in Virginia by DynaLife and Valentine sufficient to satisfy the requirements of general personal

jurisdiction. See Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 216 n.3 (4th Cir. 2001) (upholding decision to deny jurisdictional discovery where it appeared that "the plaintiff simply want[ed] to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction"); Sportrust Assocs. Int'l, Inc. v. Sports Corp., 304 F. Supp. 2d 789, 794 (E.D. Va. 2004) (denying discovery request where defendants' affidavits specifically denied jurisdictional contacts). Accordingly, the Court DENIES Patterson's request for jurisdictional discovery.

### III. Service of Process

Valentine and DynaLife have moved to quash service of process and dismiss Patterson's complaint for failure to comply with Rule 4 of the Federal Rules of Civil Procedure. Failure to effectuate service of process prevents a federal court from exercising jurisdiction over a defendant. Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 102-03 (1987); Dee-K Enters. Inc. v. Heveafil Sdn. Bhd., 174 F.R.D. 376, 378 (E.D. Va. 1997). Because this Court finds that it lacks personal jurisdiction over Third-Party Defendants, it RECOMMENDS denying Third-Party Defendants' Motion to Quash Service of Process as moot.[11]

---

[11] The Court nevertheless notes that service of process was improper to the extent that Patterson sought to effectuate service on Third-Party Defendants pursuant to Rule 4(h)(1) and Va. Code § 8.01-329(A). Rule (4)(h)(1) permits a corporation to be served in the United States "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where

## IV. RECOMMENDATION

Having found that this Court lacks personal jurisdiction over DynaLife and Valentine, the Court RECOMMENDS that Third-Party Defendants' Motion to Dismiss (ECF No. 44) be GRANTED. It further RECOMMENDS that Third-Party Defendants Motion to Quash Service of Process (ECF No. 42) be DENIED as MOOT.

## VI. REVIEW PROCEDURE

By copy of the Report, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure:

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within 14 days from the date of the mailing of this Report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(d) of said rules. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

the district court is located . . . ." Fed. R. Civ. P. (4)(e)(1), (h)(1)(A). Patterson's process server served its summons and complaint on the Secretary of the Commonwealth of Virginia. Virginia Code § 8.01-329(A) permits substituted service on the Secretary of the Commonwealth for a non-resident defendant only when personal jurisdiction exists over the defendant. Because personal jurisdiction does not exist over Third-Party Defendants, Patterson could not accomplish proper service on Third-Party Defendants through substituted service on the Secretary of the Commonwealth. See Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984) ("When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored.").

23

72(b)(2). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2).

2. A district judge shall make a de novo determination of those portions of this Report or specified findings or recommendations to which objection is made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of the Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

November 17, 2011

24